Are you ready to proceed, Mr. Josepher? Certainly. The Court encourages you not to repeat arguments, but the time is yours. Well, thank you, and good afternoon. As you know, our case is a little different from the first one in that we have two arguments. The first is that the health care providers are directly liable for the combined direct infringement, and the second is that regardless of whether you agree with that, EPIC is certainly liable for inducing the combined performance of the entire patented method on an indirect theory. And indeed, if the health care providers were not directly liable, then the indirect argument would be especially strong, because the whole point of the indirect infringement doctrine, as the Supreme Court has explained, is to provide a remedy in circumstances where someone is profiting from the performance of the entire patented method. But, counsel, the Supreme Court in Aero Manufacturing, and you really don't respond to this at all in your brief, despite the red brief hammering it, said, and I quote, there can be no contributory infringement in the absence of a direct infringement under 271A. I mean, that seems like as clear a statutory construction as I can imagine, coming directly from the Supreme Court. So I don't understand your second argument, which is even if there is no direct infringement, there can still be inducement, and I don't see how we could disregard the Supreme Court on this. The distinction we're drawing, which those cases just don't address at all, is between direct infringement under A and liability for direct infringement under A. In other words, direct infringement, in our view, is the combined performance of all of the steps, exactly what the method claims. But that still doesn't tell you who, if anyone, is liable for it. If 271A requires all the steps to be performed by the same person, which you concede in your brief, that even if that's true, you can still prevail under 271B. If 271A requires all the steps to have to be performed by the same person, then there is no infringement under 271A. So how could you ever prevail under 271B? The Supreme Court didn't use the word infringement in nebulous sense. They tied it directly in the quote to 271A. No, they didn't just say infringement. They said infringement under 271A in that quote. Right. But again, the distinction we're drawing is, which by the statute draws, Section 282 separately distinguishes between non-infringement and absence of liability for non-infringement. It's a distinction that's drawn by Congress itself. Section 282, which talks about pleading defenses, separately calls for the pleading of non-infringement, absence of liability for infringement, and then various other defenses as well. So you're saying that if you read A, when A says infringes, that doesn't necessarily mean that any liability goes to it? There has to be a second inquiry under A of direct infringement, and then a second inquiry as to whether that means liability? Well, even under the principal-agent test, I think the Court's already crossed that bridge. If someone would be liable under the principal-agent test for the combined performance, there's infringement, but they're not both liable, because the agent's probably not. The point of the whole attribution test that the Court was talking about earlier is to determine all of the acts that are performed, and they add up to the performance of the entire patent and method. Is any one person going to be treated as being responsible for all of them by performing some and having the others attributed to them? But where there's an agent, the law assumes that the acts are being done, are being imputed, and therefore done by one person. So we're not saying, under our current state of law, it doesn't say that you can have separate actors and that somehow that becomes infringement. What it says is that all of those acts are attributed back to one. Right, but the common law attribution theory, the direction or control theory, is expressly not limited to principal-agent. The common law attribution theory, which is relevant here for direction or control, explains that in the view of the law, if I accomplish an act through directions to another, it's exactly the same as if I did it myself. That's Comment 8 of the Statement of Section 877. And it's a very nice fit for direct infringement. If you take the acts I did, you take the acts that I directed and the law therefore treats me as if I did, and you add them up and they're direct infringement, I'm liable. And to some extent, this Court already crossed that bridge in BMC by adopting its own direction or control test for this very purpose, which is why on the first question, back to direct infringement now, we're only asking the Court to do one very simple thing that would resolve both of these cases and 95% of all others, which is to agree with BMC that you need an attribution test, a direction or control attribution test, for purposes of direct infringement, because otherwise the law is subject to willingly evasion. But it's explained that in light of the experience you've gained over the last four years, you now know that the direction or control test, to be consistent with the purposes of the patent act, has to be as broad as the common law one and not be too narrow, for instance, as the Court has more recently focused on. That's what would actually close most of the gap. The current attribution test, the current narrow version of direction or control, plus acting in concert, would close maybe 1% of the gap. But when you say with the common law test, you're blurring the common law test for joint tort figure attribution and the common law test for criteria's liability attribution. They're two different common law tests, and you try to put them together and ask us to use them all. Well, no, because again, if we're focusing just on direction or control, and we're happy to simplify it by focusing just on that because that will resolve almost all these cases. But again, what the restatement says is that if I accomplish an act through someone else, it's the direction of someone else, it's the same as if I did it myself. And BMC crossed that bridge by saying, yeah, we'll add up those acts for purposes of direct infringement. And the reason that you have to is otherwise the act as a whole, in terms of statutory construction, makes absolutely no sense. Because I'd be liable if I performed all the acts myself. I'd be liable if I induced someone else to perform all the acts. But by some legal alchemy, I'd get off if I mixed those two bases for liability. And that then not only is not an arguably sensible interpretation of Congress's intent when you read the statute as a whole, it also creates the problems that AIPLA and the other amici have identified, which is patent laws. No matter how you write the claim, as long as two people can figure out a way to divvy it up, you've got a ready-made evasion at that point. I gather your position is that Epic is the inducer and that direct infringers are the two parties, the health care provider and the patient who initiates the inquiry. And that raises the question of an innocent infringer. The initiator is presumably innocent. But I gather from what you just said, one answer to that question may be 282B, a defense absence of liability. Is that how you deal with the innocent infringer problem? Because otherwise the patient is a direct infringer and is liable. Right. Not under either the direction or control or the knowingly combines test. The reason is for direction or control, and we agree with this aspect of BMC, only the director is responsible for all of the conduct. So in our context, the health care provider certainly ought to be liable because it performs all but one step and it directs someone to do the other step very specifically. It causes the person to do the other step. But the patient would not be liable under certainly the direction or control test because it has no idea, presumably, as far as the record shows, it's got no idea what the health care provider is doing in terms of its computer network. So it's not directing something it doesn't even know about. It's not knowingly combining with something it doesn't know about. And it's not acting into concert to perform those other acts it doesn't even know about. I will emphasize though that not only do these tests really truly protect the innocent, they give the innocent far more protection for method claims than for product claims. In terms of some of the questioning earlier, even in our view, method claims have far more limited remedies than product ones because if this was an apparatus and I just log on Yahoo and it turns out the Yahoo apparatus infringes, I infringe without more just by using that system under Centillion. Here, that's not the case for method claims because I actually have to be, there's other acts that I have to be attributable for and if I don't know about them, there's no way that under any of these tests they'd be attributable to me. And in terms of the questions about product claims, product claims are irrelevant here because of just the nature of what it means to infringe. There's always going to be a single direct infringer for a product claim. Making a product under Deep South means finally completing it, putting the last piece on it. So whoever puts the last piece on under Deep South, that's one single entity that directly infringes by me. And then anybody else would just be B or C at most if they were involved. Similarly with using a product again, once the, and that's also the cross-medical situation as in Deep South, then if we're talking about using a product again under Centillion, if someone else makes the product and I just put it in motion, then I'm liable for it. So again, you always have a single direct infringer in the product context. The one thing that otherwise would be a gap in the statute is for use of a method where two people combine to perform all the steps. And as one of the questions before suggested, I think from Judge Moore, I think it's fair to say that Congress wasn't specifically thinking about that when it wrote the act, which is why you then fall back, one of the reasons you then fall back on the common law presumption that Congress, unless it clearly expresses itself otherwise and didn't clearly express otherwise here, that incorporates the background of the common law precisely to fill the gaps that might otherwise exist. And these common law attribution rules, the three that we've identified, especially direction of control, which to some extent the court has already adopted, are not only consistent with the structure of the Patent Act and legally compelled because of the canon of construction, they're also entitled to a lot of respect because the same issue arises in numerous other areas of law, has for centuries. Would you agree then with the claims that have been made that really the resolution here is appropriate claims drafting, that we should leave it to the patent bar to resolve this and through proper patent prosecution? Well, for two reasons. First, experience has now shown, I think this was not true at the time of the BMC, but experience has now shown that claim drafting is irrelevant because you're damned if you do and you're damned if you don't. If you contemplate two people doing something and you write it to clearly say one does this, the second does that, BMC says write it from the perspective of a single actor. If you write it from the perspective of a single actor, then the current jurisprudence says that, well, if two people can still figure out a way to split up the method claims without entering new contractual obligation, then they can infringe on your exclusionary right willy-nilly. So as a result, this now affects every method claim. And it's not that Golden Hour was wrong. I mean, Golden Hour is an exact right application of these principles that if you've got two combined actors and one of them is not a master servant and one of them is not in a contractual obligation, under this court's law, you can just split that up. And that's what causes the problem. The easiest way, as I said before, to close the gap and address 95% of the cases without raising any new jurisprudential complexities is to say we work right and wrong across this bridge with the direction or control test. We now just have to read it to be as broad as the common law direction or control test to take out almost all of these. Could you revert to the fact that so they can avoid infringement? That all requires or precedes knowledge of the patent. If they're trying to avoid infringement, they must know about the patent. And I thought when we all agreed to one thing, which is that under 271A, there's no knowledge of the patent requirement. We're talking about people. Now, Mr. Dunner added a knowledge requirement that the other person is performing the other steps, but no knowledge of the patent. So when you're getting into motivation to avoid infringing on the patent, you're really talking about B cases, right, not A cases. Well, we certainly agree that A direct, which is what we're now talking about, is a strict liability tort. Intent to infringe, knowledge of the patent is all irrelevant. We completely agree. But the point is that once one agrees, the reason it's a strict liability tort is that I have an exclusionary right, and if people are infringing on it, I'm entitled to redress without more. And here, when everyone agrees that if one person does it, that infringes on my exclusive right. If a principal and agent do it, that's good enough. If contracting out, it seems to be agreed that I can't contract out a step because that infringes on the right. Then why is contracting out a step any different from arranging out a step? Instead of entering a formal contractual obligation where someone does something, I just get them to do it. Under the eyes of the law, especially Restatement 877, the Restatement Direction and Control Test, it's the same thing. It's all as if I'm doing it myself. And if you say that you're going to have different consequences, then a lot of these patent rights are going to be worth a whole lot less than everyone thought they would. But to get back to the drafting question, our other point there is that patents that recite acts of more than one actor are not invalid for that reason. There's no validity rule against them. There's not even a PTO drafting rule against them. And so when Congress has conferred an exclusive right on McKesson for this claim, this claim that says one person does one thing and someone else does the other things, this Court obviously has great latitude to interpret the exclusive right, to interpret the remedies, but it's not reasonable to read the act as a whole as completely destroying the only exclusive right that Congress chose to grant, which is over the combined activity. The power to destroy, to interpret, in other words, is not the power to destroy. That would just be judicially nullifying an exclusive right that Congress did grant. Can you give me an example of a situation that you're concerned about that couldn't be solved by claim drafting? Well, I was going to say a not-so-hypothetical claim that's going to turn into golden hour. You've already discussed that. The Court's concern about golden hour, one question was, well, those two parties— Put aside golden hour. Is there an example of— Our claim. What? The claim in this case. The claim in this case contemplates—obviously, we would resist this— but the claim in this case contemplates the patient initiates the communication, and then the provider's computer network will perform a number of steps. We'll say I'm a doctor's office, and I'm not— Well, why can't it be drafted, say, in an environment in which a patient seeks to do this, taking these additional steps, and then list the steps that aren't taken by the patient? Well, that's what I meant to say. If you flip the first step in our case, instead of initiate a communication, receive a communication, then it's all written from the perspective of one actor. But then if the doctor says, I'm not a computer guy, I'm going to outsource some of these networking steps to a computer networking company, then you've got the steps being divided no matter how it was written. Wait a second. Under the hypothetical, you've got a direct infringement. The doctor is now directly infringing because the claim has been rewritten to say receiving. So if somebody provides the computer program for that, that person, because there is now direct infringement, can be guilty of inducing infringement, right? No, I'm sorry. To be clear, what I'm referring to is the remainder of the steps. If you take our claim, the whole thing, including all the computer processing, and write it from the perspective of one entity, which is presumably going to be the doctor's office, but the doctor's office says, I'm going to perform some of these— I've got to do some of this because I'm the one who's got to get back to my patient, so I'm going to perform some of these steps. There's no way around that. But the hardcore computer processing stuff, I'm just going to get somebody else to do that. Then you've outsourced that step no matter how well it was written. Well, you just draft it so that the doctor has received assistance from the computer company that performs these other steps? Right, but if you draft it that way and the doctor does it himself, then he's not liable because in order to receive the assistance, he did it himself. But I think this is an important point. Then you'd have two claims. Right, except that you're immediately going to have 16 claims. I mean, and you're probably not going to think of everything people can do. I mean, it's one of the points that Yamiki made is it's impossible to envision ahead of time, writing a patent every way that people might think of to split this stuff up. But even if you had all that foresight, you talk about bad claim drafting, you're going to turn one claim into any number of permutations, and then you're going to go back to the specification and add in a written description for all of them, and that's when you're going to have a much worse situation. Also, again, from the perspective of this is not ideal claim drafting, there are other very good practical reasons not to draft claims this way, which is they're just harder to prove factually and investigate and so forth. But from the perspective of the Patent Act, especially the definiteness requirement of Section 112, really clear drafting that says the idea here is one person does this and the other person does that is normally not viewed as a detriment. In some respects, it's viewed as a good thing to be clear and precise about what you're talking about here. Mr. Joseph, on your earlier point about how one gets a patent from the patent office so they have a right to exclusion, I don't think very many people would disagree with you. But that right to exclude has never been seen as being enforceable against a party performing just a subset of the method claim. An example of that is that in a method claim, a lot of the steps are often in the prior arc. So if one is passed, it's generally accepted, right, that if one is performing just several and not all the steps of a method claim, particularly in instances where that's in the prior arc, they are not infringing on your exclusive right? We certainly agree all the steps have to be performed. The question then is by one person or by a combination of people where it's all attributable to one person. We agree they all have to be performed and there's no question about that. So the question comes down to what constitutes conduct that's sufficient to attribute it to the other. Absolutely, and we look to just a broader version. I mean at the bottom we just look to the full version of the Direction or Control Test, a common law instead of the narrower one here. It's also important to emphasize though that remember when a claim is written like this, validly written like this, the only thing that it covers, the only exclusionary right is against one person doing one thing and the other people doing the other thing. So as long as that's a valid patent, to say there's no way to enforce the patent exactly as written, which is the only thing we're trying to do here, is to say there's no remedy at all. Also you talked about some of the earlier cases. There are a number of earlier cases in which there was liability even though no one entity performed all the steps or no one principal agent did. And in the first case there's a bit of a song and dance about well maybe those were contributory infringement cases and not direct because they don't have contributory there. Now obviously we have both direct and indirect, so to some extent we don't care which way you view those cases because we went under either way. But the important thing there is that under the current approach, all those cases would have been wrongly decided. Because if you say that when no one person performs all the method steps, there's no direct infringement, and without a liable direct infringer, there's no contributory infringement, then it's impossible to explain how there could have been any kind of liability in the peerless, fromson line of cases, including the other ones we cite back.  And then finally, I think one other point that had come up earlier about direct infringement, which was Judge Bryson's questions about the knowingly combines test. And again, we don't think the court needs to get into that because direction of control is more than sufficient to resolve these cases and almost all others. But in your hypo, I don't know the direction, which is the one about, as I take it, a merchant performs a method step on a product. Home Depot sells it. The consumer performs the rest of the steps. I don't think anyone's liable because you need someone who performs a method step and has knowledge of what's going to come next. And as I understand it, the merchant performed, the manufacturer of the product performed the method step, but doesn't know anything more than that. Well, the bad luck of the merchant was that the customer was a talkative fellow and told him what he was going to do. I understand, but I don't think the merchant performed the method step because it was the manufacturer of the product. Well, the merchant operates a small machine shop. I should have known better than to walk into that one. But there is, I mean, the knowingly, as I said, first, we don't need to get into the knowingly combines test for this case. But in the unusual circumstance, though, and it's going to be heavily unusual because we're not just selling a product. We're performing a method step that's embodied in the product. But if someone really does perform a method step and make money, make money by knowingly combining that with someone else's completion of the patented method, one, it's going to be a really rare scenario. But two, in the context of a direct liability torque where people have been held accountable for a lot more innocent conduct, it doesn't strike me as the end of the world. There's also discussion about the difference between A and B and C. And I think it's a critical point because, again, one of our points is however you divvy up A and B and C, the thing that would not be appropriate would be to make the liability in all those earlier cases go away altogether. But in terms of the distinction, as we understand it, B and C deal with the issue that I was focusing on where someone is not a direct participant at all. If not a direct participant at all, the only liabilities in B and C because Congress essentially was aiding and abetting specified specific standards. For the situation where you have direct actors splitting up a method step, that's A because it's direct actors. We agree with B and C on that. And then the point is just that because Congress didn't spell out an attribution rule, this court was correct to fashion one in B and C. But, again, we just think it needs to be a bit broader so that it can actually plug the loophole that we've been talking about here. It's all we're asking you to do is to stay on the same jurisprudential bridge you already crossed and just recognize your broader test because subsequent experience has shown that the really narrow one doesn't fulfill. What is that broader test, counsel? The restatement, the direction or control test from the restatement section 877, that if I direct another to perform a step, cause it three directions to the other, cause someone else to do it, the law treats that the same as if I did it myself. And at that point, it's a really good, you can say in effect there is a single entity because I perform some steps, the law treats me as if I did the others. And at that point, you just add it all up and it's essentially attributed to me. Don't you think the direction in that context would be a highly fact-specific word that could be reinterpreted on a case-by-case basis depending on who the parties are, who the players are, what the industry is, even what their intent was in doing it. I mean, isn't that fair to say? Well, I'd say two things about that. First, any rule you adopt, short of a really arbitrary one, even under the spectrum, there are going to be some close factual cases. I have no doubt of that. But of the cases that I've seen that implicate this issue, the ones I've seen are all really easy. If you take ours, for example, there's no question that the only reason the patient initiates a communication is that the healthcare provider first sets up the MyChart network, second sets up a personalized username and password for the patient, third gives the patient instructions on how to do all that in order to successfully persuade the patient to do it, and then the only thing the patient can do with all of that set up is to initiate a communication which will automatically trigger the performance of the entire patented method. I mean, that's why this is so extreme. But you wouldn't say that that patient was acting in an independently tortious way, would you? Their act was in and of itself tortious? The patient's act? No. Then that takes it out of 877, doesn't it? No, because 877... Well, two things. First, the restatement comments that people talk about, this is a really important point. Because the different attribution theories cover different conduct, they all have different limits and restrictions, and none of the restatement comments people like to talk about are comments in Section 877, which is the directional control test. Instead, the only thing that 877 says that's relevant here is that if I accomplish a result through directions, the law treats it as if I did it myself. And again, in BMC, when the court adopted its own attribution test based on directional control test, it already crossed that bridge. I'd also point out, and the way Prosser explains it is a nice point as well, that although my acts might be totally innocent independently, they become wrongful when they're done in the context of what the other person is doing. But BMC didn't cite 877. No, we're not... To be clear, I'm not defending BMC all the way. What I'm saying is that a lot of the jurisprudential framework that we're advocating here is incorporated in BMC, because BMC adopted a direction test for this purpose and looked at common law sources in defining it. Our only point, then, is that test 1 is too narrow because it's a matter of law. When Congress enacts a statute against the backdrop of a common law, it enacts them against the backdrop of the entire common law, not just little pieces. But second, also, in terms of perpetuating Congress's intent, that there actually be a remedy for the violation of an exclusive right, that it's now become clear that the way that BMC did it was too narrow. And if you expand that in light of the new experience that we've had over the last four years, then that minor modification, one, complies with all the legal canons of statutory interpretation about the backdrop and about the fact that right as a whole, Congress truly intended the right to be enforceable, otherwise it wouldn't have given the right. Then that's the one minor modification because you've already adopted quite a lot of the jurisdictional framework that leads us up to that conclusion. Counsel, do you also advocate the acting in concert theory? Yes. Then how do you contend with the restatement's comment C, which is that it is essential the conduct of the actor be in itself tortious, not you're taken together with the other act tortious, but the act of the actor be in itself tortious. Right, and I agree with Mr. Dunner on that completely, that the distinction that the restatement's drawing there when you read the paragraphs in context is between tortious conduct and conduct that's innocent, rightful, and careful. And as Prosser explains, what that means is that although my conduct might be innocent, right, and careful on its own, when it's combined with what I see the other person is doing, it becomes tortious. And that's, for example, the old nuisance cases where it's totally appropriate for me to dump stuff in the river. Nothing wrong with it, nothing wrongful about it. But when it becomes wrongful is if there's too much, say 20 tons. So I can dump 19 tons at will, nothing wrong with it. But if I dump 19 tons knowing that the guy across the river is dumping 2 tons, that does then become wrongful because I know that we're polluting the river. And it's the same point here that innocent conduct can become tortious based on the context in which it is done is the basic idea there. If there's no more questions on direct infringement, I did want to spend a little more time on indirect infringement because the whole point... You're into your rebuttal time, you realize. I understand. And just very quickly then, the whole point of the indirect infringement doctrine is to find a remedy in circumstances where someone's profiting from patent invention. But the technicalities of the patent law make it impractical to go after someone for direct infringement. If the health care providers really didn't directly infringe here, that's exactly what we'd have. And the reason there has to be a predicate after direct infringement is that indirect infringement is supposed to be a remedy, not an expansion of the underlying patent right. And here, all we're trying to do is to enforce the patent exactly as written with the performance of all the claim steps. It's not an expansion of the right. It is just the equitable remedy that indirect infringement is supposed to provide. And again, there are a lot of cases before BMC, we cite in our brief, where there was no single actor for purposes of direct infringement, but the courts found contributory infringement. And that's consistent with the notion that this is an equitable remedy that's supposed to cover exactly this type of situation if there's no direct infringement. Thank you. Thank you. Mr. Moore. May it please the Court. Judge Moore was right to point out that the first question in this case, which is if separate entities each perform separate steps of a method claim, under what circumstances would either entity or any third party be liable for inducement or contributory infringement, is squarely addressed by the Supreme Court's decision in Arrow where it said that there must be 271A, direct infringement as predicate. So really, the question in this case comes back to the same question that we've been debating in the prior case as well. What is the right standard for direct infringement under Section 271A where more than one party performs the steps of the method? And there are two pieces of the argument here. First is the statutory interpretation, and second is the extent to which, if at all, any common law principles undergird that interpretation of the statute. Let me first address the statutory provision. The statute reads, omitting some language, whoever uses a patented invention is an infringer. So to be an infringer, an entity must use the invention. Here, under the well-known all elements rule, must perform all elements of the invention. And what this court did in BMC and its progeny was to adopt the well-known and well-established doctrine under Supreme Court law that federal statutes governing liability are set forth against a backdrop of vicarious liability. It would be the odd statute indeed that imposed liability only for what I did, but not for what I did through my agents. And so this is a well-known and accepted rule of attribution that where I get someone else to act as my agent, I'm vicariously liable. That underlies all federal statutes, says the Supreme Court. And that's the background of the common law that's imported into the statutes, unless Congress clearly indicates otherwise. Now McKesson and Akamai have called the additional tests they want to bring in, tests of attribution, tests of vicarious liability. That is not so. Those are tests of common law joint tortfeasor principles, which were enunciated over hundreds of years by common law courts in cases of intentional wrongs and negligence. And Congress did adopt joint tortfeasor principles in the Patent Act. I would commend the Apple amicus brief, which at a quite lengthy way, thorough way, shows how Congress wrestled with these issues. And there was a great back and forth, prompted by Judge Ridge, of what are the appropriate pieces of joint tortfeasor principles, such as those set forth in the restatement, that we should enact in this statute. What came out of that is that a species of that overall genus of joint tortfeasor law was adopted. And that's what the federal court recognized as well. The two species adopted were 271B and 271C. Quite properly so, because those are torts that deal with intentional conduct. The common law of joint tortfeasor, all of the principles in Prosser and the restatement sections that we've been talking about here today, originated in that context of either intentional wrong or negligence. And we see we have areas within the Patent Act in 271 that deal with the intentional aspect of it. But, as we all agree, Section 271A is not an intentional wrong. It is not a negligence-based statute. It is strict liability. And there is no authority that would adopt these negligence or intentional-based theories into a strict liability cause of action. Even the restatement itself acknowledges this. The restatement is a compilation and synthesis of hundreds of years of common law. If there were a body of well-settled common law cases adopting these negligence-based principles, under which each actor's acts must be independently wrongful and tortious, into a strict liability setting, then the restatement would tell us that. But this is a 271B case, isn't it? Where intent is relevant. Obviously, Epic intended the health care provider and the patient to perform the two tests of the step for the patent. Well, we dispute the notion that it intended it in the 271B inducement test and step context, and that, of course, has not been decided by the district court. What was that invention for? What was its use? We do agree that Epic licenses the software in order for providers to provide it to their patients who do so on a voluntary basis, and patients may use it if they wish. There's no question about that. I didn't want to go too far and admit that it did it with knowledge of the patent and intent for infringement, as would be required for 271B. And Your Honor is correct that McKesson's theory of liability against Epic is under 271B, but, as the Supreme Court held in Arrow, we have to find direct infringement under 271A before we even address that question. The district court did not address whether Epic is liable as an inducer. It held it did not need to do so because there could be no showing by McKesson of direct infringement under 271A. And that's why this distinction is critical, is that we must have this strict liability act of direct patent infringement before we get to the indirect. And that's the first question that the court asked us to address. If I were to interpret BMC as a broader holding than Hackemuller, namely the directure of control test applied to more than just what would be covered under pure agency or contract placeable, would that be okay or would you think that that is problematic? I think the words direction or control have been bandied about today with a little bit of lack of clarity. What the BMC court held was that these notions of direction or control are me directing someone to do something or controlling someone's conduct in doing something, not merely me giving you directions on how you might want to use a website if you should choose to do that. And it's those notions of direction or control that underlie the premise of vicarious liability. So I think that even though BMC talked about... Suppose in this case doctors told the patient to fill out the forms or go on the internet and do this. I mean, I have doctors now that say, fill out all of the free paperwork online before you come to the appointment. I mean, that seems like direction. And when you're talking about a doctor-patient relationship, how many people are going to disregard the directions of their doctor? Not very many, right? So given that level of direction, why isn't that adequate to satisfy the test as enunciated by BMC? I believe Akamai narrowed that test, but the test enunciated by BMC. Why wouldn't that fall under that? I have a lot of doctor friends who might disagree with the premise that people always listen to their doctors, but apart from that, the issue is we've got to find somebody liable for doing these steps, and they must be vicariously liable for doing so. I actually don't think, with all due respect, that the Akamai decision narrowed the BMC decision. It seemed to be unique in that sense. But because it all boils down to vicarious liability. If anything, the language in the Akamai panel decision in terms of contractual obligation could extend it beyond situations of pure agency. And that's what we're talking about here with vicarious liability. The direction is certainly less than contractual or agency, isn't it? I don't believe that term was used in BMC. No, it is, because again, it's not just here's the directions on how to use this product. If you choose to buy it from me, if you choose to log on to my website, here's the directions that I would encourage you to follow if you wish to use it. That shouldn't be enough to attribute the conduct of somebody who independently makes that choice to the actor that provides those instructions or directions. Direction in the context of BMC, the court's decision there is quite clear that it is a vicarious liability related direction. That I'm directing you to take an act. I, Ford, am directing ACDelco to make me that engine. And I want it with everything but the cover on it, because I'm going to do that myself. That's the type of direction that would give rise to liability. Because again, it goes back to the statutory notion that whoever must do is practice the patent and invention. And to practice the patent and invention, you've got to perform all the steps. So you need to do it. Why is the issue of direction and control not just a pure factual issue that belongs to juries? I mean, why should we articulate a standard or test as to what constitutes direction and control? In an appropriate case, it may well be a factual issue. In some of the hypotheticals that we've heard today, that may well be a factual issue. But just like any other issue that is potentially an issue of fact, there are circumstances where the evidence is undisputed. That means that under that legal principle, no reasonable jury could find in that favor. If we'd have the tool, then we'd have the tool for summer judgment. So that would be a tool for the district court to utilize in those situations. And that's what happened here. The facts here are absolutely undisputed. There's no question as to the relevant facts that this is a voluntary website that nobody is required to use. Nobody is required to sign up for it. They don't have to use it if they sign up for it. There's absolutely no obligation on any part of any patient to use the website. And if this court were to interpret 271A so that that were sufficient to find direct patent infringement liability upon these patients and providers strictly liable, then really the door is wide open. We could have a method step with four different steps and four different independent actors each perform one of the steps. And there's no relationship between those actors. Yet, under that logic, there could be liability. That door doesn't have to be wide open, does it? You're saying that there is no way that one can resolve the horrors that have been painted if the door is wide open and some sort of reasonable maintenance of the incentive to devise new systems, accepting that this is a new system, and enable and authorize and permit compensation for the interaction with the patient when the system is used. But certainly there is no middle ground, is what you're telling us. Well, two easy ways that could have been done here is McKesson could have written the claim differently. It also could have pursued system claims, which it had in its application, was restricted out, and then chose not to pursue later. But isn't it strange to have a system where you have hundreds of thousands of patent applications each year and everything else is the same except some quirk of some patent examiner who might require or not exam or require a particular term in the claim, some experience of the patent practitioner who has been in this audience and realizes what fine lines the courts are likely to draw? Is it not more appropriate to look and see what sorts of inventions we're looking at and how to devise and preserve an appropriate incentive if an incentive is appropriate in certain cases? Certainly, if the statute bears that out, that's an appropriate test. But again, the issue here is under what circumstances is strict liability to be found for use of a method? Well, all right, but I think we know the statute does not prohibit. The courts perhaps are reading infringement into a situation where more than one entity performs various steps. Golden Hour is an example. This is perhaps another. But it's not prohibited by the statute. It has evolved as a matter of, say, judicial policy. You might even say legislative policy. We know that 271B and C were introduced as you look at the legislative history of which we've been reminded to broaden remedies for infringement, not to restrict them. But now we're looking at A, with restrictions that until recent years one couldn't really find in precedent. So we have here some sense of an overriding policy that such restrictions are appropriate. And that's what I'm trying to understand. I work my way through the arguments because there's something for everybody in what we have so far. Certainly. And it is... Well, the all-elements rule certainly has been in the law for decades, and we would submit that the statute requires that rule. And that's not really... No one's really saying otherwise. The element is there. It's a question of who performs the element. Right. But given the nature of the liability in the statute, we would submit that a system under which 271A is interpreted to allow the joinder of any number of entities' actions together, regardless of the relationship, and find infringement. That's the logical outcome of the interpretation of the statute that McKesson advocates. But no statute says that damages will always be joined in several to full extent, whether one performs one step out of 100 or one step out of two. I would agree with you that the Congress and the Patent Act did not set forth these apportionment-type remedies. They're simply not in the statute. They didn't prohibit it. They were silent on the issue, but to me that doesn't suggest... Patentees could try to argue for full damages on a pure joint-in-several liability system as opposed to apportionment. And that simply is not in the statute and I don't believe it's in the law. But I think an illustration here on the interpretation point, going back to some of the hypotheticals in the earlier argument, would be useful. If 271A were interpreted as McKesson wants it to be interpreted, there's no reason that the same interpretation would not also apply to apparatus claims or system claims. There's nothing in the statute, I do agree with Mr. Dunner, there's nothing in the statute that restricts to one type of claim or another. Except that so far we have one set of rules for apparatus claims, another set for what we call system claims, and another set for methods. Now, I agree with you there's no reason why they should be different, but we already have a history of difference. Well, with all due respect, and I think it was Judge Lynn's point that the difference in those cases lies in which terms of 271A we're interpreting. So are we talking about use of a system versus making a system? Let me offer my own hypothetical, if I might, that might help illustrate some of this and why we should not, and indeed cannot, interpret the statute as McKesson would have it. It's somewhat similar to one of the earlier hypotheticals and it deals with an apparatus claim. If we have a patent claim that were to recite a computer, a processor, a screen, a keyboard, and then software on that computer that is used to download, store, and play music, if I am Dell Computer, I make the apparatus recited in three of the four elements of that claim. I make the processor, the screen, and the keyboard. I don't make the software that's used to download and play music. Apple, among others, does that. But under the interpretation that McKesson urges here, if I, Dell, sell my computer to a user, the user then downloads that software, the iTunes software, onto the computer, then Dell and the user have jointly made the apparatus in the claim. There's no principal distinction in the patent between that and multiple parties performing a method. And in this hypothetical, the computer, of course, is a staple article of commerce. So what we have here under this interpretation is an area where Dell Computer is liable, strictly liable, under 271A for jointly making an apparatus because it sells the computer to a user who uses it to download and use iTunes. And that is the logical outcome of the interpretation that Ackermann and McKesson urge. And I would submit the result would be the same under a pure statutory interpretation point of view. The result there is the same, whether Dell knows that users use their computers to download iTunes or not. Either way, if you interpret the statute, as McKesson asked, that is the outcome. Now, they do, I think they recognize, smartly so, that that's a bit of a harsh rule, and so they try to then bring it back to a knowledge requirement. Again, though, there's really no support for knowledge in the statute. And if we look at the common law, they want us to look at the common law joint tort fees or principles where they claim that these knowledge requirements come from. But again, let's look at what we're looking at there with joint tort fees. It's either intentional acts or negligent acts, individually intentional or negligent acts combined together as a way to say to defendants, you can't get out of liability because the plaintiff can't prove whether your wrongful act caused the harm or the other person's wrongful act caused the harm. They're a combined harm, and so you're both on the hook. You're jointly liable for your independently tortious acts. So we have intentional torts in the Patent Act already. Congress, I've already covered, adopted a species of intentional torts, joint tort fees. But what if we were of the belief that when Congress enacted 271B or C, it was meaning not to speak to the narrow portion of joint tort fees or principle it was willing to address, but rather the circumstance where the accused individual performed none of the steps and only induced the conduct of others, was not an active participant in any way, then it really doesn't cast doubt on the notion of joint tort fees as applied to 271B. Well, I don't believe the statute can be read that narrowly. I think it would apply to situations, for example, with a system claim, an apparatus claim. If I supply, if I perform some of the steps, I make some of the elements, and I supply it to someone else who then makes the rest, I could still be an inducer. I certainly could be a contributory infringer. So I don't think it can. I don't think there's anything in the text that would narrowly draw B and C to only situations where the inducer or contributor doesn't perform any elements of the claim. It is broader than that. And the problem, really, the central bank case by the Supreme Court, which is cited in our brief, speaks to exactly this situation. It holds that where Congress adopts some elements of common law, it should not be read as adopting all elements of the common law. And that's a central premise of the McKesson argument. Once we cross this threshold by allowing vicarious liability, then the door is wide open to the common law. And I would submit there's a distinction, and it's a distinction found in Supreme Court case law. In Meyer, the Supreme Court said that statutes addressing liability are interpreted with background to vicarious liability principles. But in Central Bank, it said we don't go too far and incorporate all elements of the common law into a statute where Congress, unless Congress specifically shows that it intends to do so. I think the legislative history, as outlined in the Apple amicus brief, shows quite clearly that Congress had no intent to incorporate any aspect of joint tort fees or principles into 271, except for B and C. One other point there I would make is that Congress has not been shy about adding to the statute. The Deep South case, which was referenced earlier, is a situation where the Supreme Court had held that there could be no infringement under 271A because the shrimp deveiners were not sold in assembled fashion. They were only assembled after they went overseas. And in that situation, the Supreme Court said under the literal text of 271A, there's no infringement. Congress, in response, enacted 271F. So again, Congress did intentionally include joint tort fees or principles in certain instances, did not include others, and that's exactly the situation that central bank speaks to. Now, the other issue I would like to address on the joint tort fees or issue is that, as I mentioned, intentional torts are included within 271 in B and C and other places, but not in A. The other aspect of the joint tort fees or cases, and some of the comments say this quite clearly, including comment state 77, which talk about the need to show negligence. And so what McKesson is trying to do is essentially incorporate a negligence requirement into 271A through its knowledge rule. And negligence, of course, implies a duty of due care. And so now, if this rule of if I know that someone else is doing other parts of a method, there may not be vicarious liability, I may not direct them to do it, I may not control their performance of it, but I know they're doing it, then all of a sudden I'm liable. That puts me, as someone doing less than all of the method, under a duty of due care. We would submit there's no support for that notion in a strict liability statute, and indeed it's the very antithesis of a strict liability statute. There could be any number of questions that would arise then. What is my duty? Do I have a duty to learn about the patent? Do I have a duty to investigate what other people are doing? Do I want to use a website? Do I need to call up the provider of the website and get them to explain to me how their server works because I need to make sure that I know that I've investigated this properly? I think all those questions are opened up by this rule of trying to wedge these joint tortfeasor principles into what is a strict liability statute and that it should not be done in that regard. I think that covers it. One other point on knowledge. If you'll indulge me, one other hopefully short hypothetical on the knowledge. I think this illustrates another reason why the knowledge result really wouldn't be satisfying. Let's say I have a manufacturing method claim and there's a patent on that claim  and the last step is that you've got to put the reflective coating on the patent. I thought it was really good in my patent that reflective coating really helps it last longer and so that's my central advance. Let's say someone else sees that patent and says, let's take a look at that. I know I can't do those six steps so let me mess around with this and see what I get. I do five of the six steps or the person trying to work around the patent does five of the six steps but discovers in addition to that that if I use a different metal alloy than what is set forth in the patent I don't need the reflective coating. In fact, the product works better than the old way with the six steps with the reflective coating. Now, if that happens, the person that has discovered that has fulfilled the very essence of our patent system. They have taken the public disclosure that the patentee got in exchange for the limited monopoly and found a better way of doing it. But let me further suggest that if I'm this person who worked around this and found this new advance that I didn't need the reflective coating if I try to sell that to my distributors, they then say well wait a minute, where's the reflective coating? My customers want a reflective coating. Are you used to having that in this product? I need the reflective coating. I say, well, you don't you know, I don't have it in my product. What if the distributors then add the reflective coating because the customers want it? And then I know that. I'm the manufacturer and I know that. I know I've seen it out on the market. I see that we have these coatings on these products. In that scenario where I know that people are doing it I'm not directing them to do it. I'm not controlling them into adding the coating. It's not a subterfuge situation like the Ford AC Delco ISO, but I have contributed to the general knowledge and innovation I would be liable under the McKesson test because I performed five steps of the method and I knew that someone else was doing the six. And that cannot be the correct interpretation. It is not, we submit, the correct interpretation of the statute. But that is the result that we would get to under the McKesson rules. I would like to address it very quickly at the beginning. I would like to cover a little bit on the indirect necessity for direct infringement for indirect and this is a statutory point that 271 B and C clearly require infringement in order to be an infringer. And the Arrow Court for 50 years has held that as we said. Mr. Josephert suggested that there could be some secondary test that if I'm found to be an infringer under 271 A, we then need to go to a second proceeding to determine if I'm liable for that infringement. We would suggest that there's simply no basis for that in the statute. Under Section 281, if I'm an infringer I'm subject to civil action. Under Section 284, I owe a reasonable royalty and it would overturn other cases in fact that this court has held such as NTP, such as Dynacorp. In NTP of course, we talked a little bit about the system claims. The method claims in NTP were found by this court not to be infringed. The reason being there was no 271 A infringement by the users because one step of the method was performed in Canada. Let me make sure I understand your position on a wrinkle that you touched on earlier. Suppose you're in a 271 B setting. Your inducer actually performs some of the steps and induces the rest of them. 271 B liability or not? I'm sorry, I may have missed this. Was it a method contact? Yeah. Okay. So in other words, if I perform some steps and you perform some of the method steps but you leave to your customer, pursuant to your directions and instructions, the rest of the steps. Is there 271 B induced liability? Only if there's 271 A direct infringement liability. Are you suggesting that in that setting as long as the inducer does some step and then leaves the rest of the steps to the customer that there's no liability? Not if the inducer directs or controls or is otherwise vicariously liable for the actions of the person doing the remaining steps. Then there could be direct infringement liability but you may not need. What's confusing to me is are we saying that the kind of, I mean it would seem to me that the kind of instructions inducement and so forth necessary to satisfy the requirement of 271 B would not necessarily be sufficient to satisfy you that there's direction or control in the strict common law sense, correct? It may or may not. You're correct. There could be instances where kind of otherwise inducing, for example, if we had an apparatus claim would not rise to the level of the common law. But I think again this is this requirement of direct infringement is statutory and so is there a situation where you can be liable for inducement in situations where there's no 271 A infringement because the appropriate direction or control vicarious liability is not present between the two actors performing the claim? No, because the statute says that. Your answer has created a circular problem. In response to my question earlier, I asked you if 271 B could capture situations beyond or is limited to the situation where the inducer performs none of the steps. And you responded to me, no, no, Judge Richard could perform some of the steps and still be covered under 271 B. But in response to Judge Bryson just now, you seem to have said the exact opposite. Well, I apologize if I was confusing, but I think it can be reconciled in part because of different claims that we're talking about, potentially different types of claims that we're talking about. It depends on whether there's sufficient liability, but first of all 271 A infringement is a prerequisite for B and C liability, there's no question about it. That's why I said at the beginning, it depends on what the right test is that this court adopts for 271 A liability. That test must be present. Would an inducer ever be liable if he performs one of the steps? Yes. How? Because if he performs one of the steps, then the direct infringer would not be performing them all and there would be no direct infringement under 271 A under your theory. There could be direct infringement if there were direction or control and I would submit that in many cases where there's control limited to an agency type process, not in the common law sense. Well, I would dispute that in the common law sense that it is different. I think frankly the common law... Then why would you ever file for inducement if in your theory the direct infringer would be the same person as the inducer because he is in the common law sense making them act as his agent so 271 B would be superfluous in your statutory interpretation because it would be entirely encapsulated under 271 A. So too, if there were a broader rule that allowed anything goes as far as direct infringement which you no longer need to file under B. I don't understand anybody advocating an anything goes concept. I mean, I didn't read either Mr. Josephers' brief or Mr. Dunner's brief as an anything goes for 271 A, but rather a direction or control or concerted action theory. But that's the logical outgrowth of their interpretation. I recognize they pulled back from that and tried to fit in inappropriate common law principles, but it did factor my Dell computer hypothetical that you could be an inducer in that hypothetical if you intend for that for my computer to cause you to download iTunes and imprint, you could be an inducer in that hypothetical even though you performed some of the elements of those claims. I suppose if Congress in 1952 had intended that an inducer could make himself a direct infringer by inducing steps where there was no direction and control, they might have said so. I think that you're correct. The statute does not speak to that. Thank you, Mr. Moore. Thank you. Mr. Josephers, you have three minutes. Well, thank you. I think it's worth taking just one step back and saying that the upshot of the other side's position is that Congress conferred an exclusionary right with no remedy under virtually any circumstance except the implausible agent principle one. And even in any statute, that's not a reasonable way to read a statute as a whole, especially one here where Section 281 says that a patentee shall have a remedy by civil action for infringement. So, there's a fair question as to what the remedy is, but to say that basically it's a transparent shell game here. They're not hiding the ball, but they're saying it's not A because it's B and it's not B because it's A. And also, in the same way, they're trying to make a lot of this Court's cases go away where liability was found even though there's no single direct infringer. And so then they end up saying, well, okay, but method claims are bad. But there's nothing that's disfavored about method claims. By statute, they're co-equal, right? They're with product claims. And then for a lot of inventions, it's really the only kind of claim you can get. If there are some anomalies around the edges, and frankly we don't think under our direction or control test, which is all you need to look at, there are some anomalies around the edges of our position, they pale in comparison to saying, the anomaly that one, for some patents, they're never enforceable. And other patents, evasions can be willy-nilly just by people splitting up the steps as long as they don't do it in a contractual form. Don't you think in addition to direction and control, intention is relevant? Well, as a practical matter, I can't direct someone to do something without knowing it and intending it. I certainly can't enter into a contract for the Afghan concert theory without that. But that's really no different from a single entity because if I perform all the steps myself, I mean, I know it, right? I'm not going to perform a method in my sleep, at least not a patentable one. So to say that I know I'm directing someone, I know I'm entering an agreement, there's no difference from saying that I know the steps. When you then turn to the strict liability tort of direct infringement, it's still strict liability because intent to infringe, knowledge of the patent, things like that don't matter. So we're not adding anything there that's not already inherent. But direction and control certainly includes intent. Intent doesn't necessarily include direction and control. Right. I mean, direction and control is a specific way of making myself, you know, of accomplishing a result. If I cause someone to do something, I certainly intend to do so. But you're right, just intent is not enough. I have to intend to be directing or controlling them to do this. It's a relatively narrow test that would capture 95% of the bad actors without going much beyond where you already have. Also, I mean, once you agree to a contracting out exception, it's really hard to see what's any different from contracting out versus just arranging out. Either way, it's not strictly vicarious liability. But this court's already crossed that bridge. And either way, the point is just that, as her statement says, if I accomplish a result through actions to another, it's exactly the same in the eyes of the law as if I did it myself, which ends up being a very natural fit for direct infringement. Thank you, Mr. Joshua. That concludes our afternoon. All rise.